UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRANDIE LEE KORNOELJE-COGSWELL,

   Plaintiff,         Case No. 1:16-cv-871

v.

               HONORABLE PAUL L. MALONEY

COMMISSIONER OF SOCIAL
SECURITY,

   Defendant,
              /

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision by the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act.

## STANDARD OF REVIEW

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v.*

*Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was thirty-eight years of age as of her alleged disability onset date. (PageID.100–101.) She previously obtained a GED and has been employed as a quality monitor and as a hand packer. (PageID.90–91, 212.) Plaintiff applied for benefits on May 29, 2014, alleging disability beginning May 6, 2014, due to s/p bilateral hip replacement causing pain, numbness, and stiffness; bulging discs and mild scoliosis causing lower back pain; shoulder arthritis causing

2

shoulder pain and burning; pain leading to poor sleep and poor memory; a thyroid disorder; a learning disorder; and migraines. (PageID.100–101, 192–195.) Plaintiff's application was denied on November 3, 2014, after which time Plaintiff requested a hearing before an ALJ. (PageID.116–126.) On March 11, 2015, Plaintiff appeared with her counsel before ALJ David S. Pang for an administrative hearing at which time both Plaintiff and a vocational expert (VE) testified. (PageID.66–98.) On June 25, 2015, the ALJ issued his written decision which concluded that Plaintiff was not disabled. (PageID.48–65.) On May 7, 2016, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.30–35.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. § 404.1520(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. § 404.1520(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. § 404.1545.

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Pang determined Plaintiff's claim failed at the fifth step. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date. (PageID.53.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of: (1) status post bilateral right and left hip replacement; (2) arthritis of the left hip; (3) shoulder arthrosis; (4) degenerative disc disease of the back; and (5) obesity. (PageID.53–55.) At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (PageID.55–56.) At step four, the ALJ determined Plaintiff retained the RFC based on all the impairments to perform:

> sedentary work as defined in 20 CFR 404.1567(a) except the claimant can occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds. The claimant can occasionally stoop, kneel, crouch, crawl, balance. The claimant can never have unprotected heights and never can operate heavy machinery including cars. The claimant can only occasionally reach overhead bilaterally and can only operate foot controls bilaterally.

(PageID.56) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (PageID.60.) At the fifth step, the ALJ questioned the VE

4

to determine whether a significant number of jobs exist in the economy that Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff could perform work in the following representative jobs: order clerk (5,000 national positions), assembler (8,000 national positions), and telemarketer (48,000 national positions). (PageID.91–96.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.61.)

Accordingly, the ALJ concluded that Plaintiff was not disabled from May 6, 2014, the alleged disability onset date, through June 25, 2015, the date of decision. (PageID.61–62.)

## DISCUSSION

### 1. The ALJ Properly Evaluated the Opinion Evidence.

The record contains several opinions from Dr. Thomas V. Bilisko, M.D., Plaintiff's treating physician. (PageID.334–339, 358–359, 366–367, 378, 382.) In these records, Dr. Bilisko recorded that Plaintiff was more limited than as the ALJ ultimately concluded. The ALJ, however, afforded "little weight" to Dr. Bilisko's opinions. (PageID.59.) Plaintiff argues that she is entitled to relief on the ground that the ALJ failed to articulate sufficient reasons for discounting the opinion of her treating physician and also failed to weigh the opinion pursuant to the factors found in 20 C.F.R. § 404.1527(c). She further argues that after rejecting the only physical RFC opinion in the record that was from an acceptable source, the ALJ impermissibly relied on a single decision maker opinion. The Court disagrees.

By way of background, the treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and her maladies generally possess significant insight into her medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir.

5

1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers,* 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

6

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g.*, *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir., Jan. 19, 2007).

The ALJ provided a thorough and accurate summary of Dr. Bilisko's opinions as follows:

> Thomas V. Bilisko, MD, the claimant's treating physician, opined that the claimant should not be driving and should have no repetitive standing and walking and no bending at the hip. The claimant can stand and walk less than two hours a day and sit less than six hours a day. She can never left over twenty pounds but can occasionally lift up to ten pounds. She can never balance, stoop, kneel, crouch and crawl. She can occasionally reach and frequently handle and finger. The claimant needs to use a walker and need[s] an option to sit and stand at work. The claimant had medication side effects and may lose focus and attention for thirty percent of the day.

(PageID.59.) The ALJ ultimately concluded that Dr. Bilisko's opinions should be given little weight on the ground that they were "inconsistent with the medical evidence as her physical examinations revealed mild findings and showed that the claimant was not experiencing back and joint pain." (PageID.59.) Substantial evidence supports this determination.

On September 5, 2012, Plaintiff was seen for a pre-surgical checkup prior to a left total hip arthroplasty. Plaintiff had received a right total hip replacement in 2011. Plaintiff had

7

previously tried physical therapy, medication, and activity modification. Plaintiff walked without a limp and was not using any ambulatory aids. But she was only able to ambulate short distances, and had difficulty reaching her shoes, socks, and toenails. It was noted that surgery was scheduled for management of the condition. (PageID.388.) On September 20, 2012, Plaintiff underwent the left total hip arthroplasty. It was noted that Plaintiff had done well with her right hip arthroplasty. (PageID.382, 396.) A physical exam dated the same date noted that other than decreased range of motion in her left hip, Plaintiff had full range of motion in all other joints. (PageID.385.)

A post-operative x-ray of Plaintiff's pelvis found a "left hip arthroplasty with the femoral component projecting in expected position over the acetabular component. No new fractures are identified. There has also been right hip arthroplasty with the femoral component projecting in expected position over the acetabular component." (PageID.378–379.)

On July 29, 2013, Plaintiff met with Dr. Bilisko. She was complaining of pain in her shins that went to her feet as well as low back pain. (PageID.308.) On exam, however, her low back had normal strength, with only decreased range of motion with forward flexion. A bilateral hip exam likewise showed normal strength and range of motion, though there was some pain with rotation. (PageID.309.) X-rays of the lumbar spine and hips were ordered. (PageID.310.) On March 21, 2014, Plaintiff complained of hip pain. (PageID.302.) On exam, her right hip strength was "OK." There was pain with rotation, but no trochanter pain. An examination of her lower back was normal except for some pain with extension. (PageID.303.) On May 9, 2014, Plaintiff complained of back pain and pain in the right shoulder. (PageID.300.) A physical exam found some scoliosis and loss of motion, but otherwise the records state it was a normal low back exam. (PageID.301.) On February 11, 2015, Dr. Bilisko noted that there was some mild degenerative disc disease in

Plaintiff's lumbar spine that was noted on two different MRIs, but stated there was "really nothing to [sic] worrisome there." (PageID.351.) He found that the major cause for Plaintiff's pain was her hips, especially the right. (*Id.*) X-rays taken of Plaintiff's pelvis on the same date, however, found no specific hip pathology. (PageID.376.) A month later Plaintiff underwent a bone density exam, which found normal bone density. (PageID.415.)

The ALJ correctly noted that the above evidence fails to support the extreme limitations provided by the doctor. While the Court does not doubt that Plaintiff is limited due to her impairments, such limitations are adequately accounted for in the RFC. Accordingly, the Court finds that the ALJ gave good reasons, supported by substantial evidence, for assigning less than controlling weight to Dr. Bilisko's opinion.

Plaintiff makes two remaining arguments concerning the doctor's opinion. First, she argues that the ALJ's analysis did not properly weigh Dr. Bilisko's opinion against the factors contained in 20 C.F.R. § 404.1527(c). Plaintiff has not demonstrated any error. Indeed the ALJ began his discussion of the medical record by noting his obligation to consider the evidence in accordance with, among other things, the factors contained in 20 C.F.R. § 404.1527. It is plain that the ALJ then considered several of the factors articulated in the regulation, including the doctor's status as a treating source as well as whether the treating physician's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques", whether it was "inconsistent with the other substantial evidence in [the] case record", and how the evidence in the record informed the ALJ's determinations on each of these factors. *See* 20 C.F.R. § 404.1527(c). Regardless of the other factors which the regulation required the ALJ to consider—such as the length, nature and extent of the treatment relationship, 20 C.F.R. § 404.1527(c)(2), and Dr. Bilisko's

9

degree of specialization in this field, 20 C.F.R. § 404.1527(c)(5)—the evidence mentioned thus far provide substantial evidence for the ALJ's decision to accord Dr. Bilisko's opinion little weight. No matter how long Bilisko had been treating Plaintiff or how much experience he has with such conditions, the record supports the ALJ's findings that the doctor's notes failed to support the extreme restrictions provided in his opinions.

Second, Plaintiff notes that the ALJ gave only little weight to the only acceptable source to offer an opinion regarding Plaintiff's physical limitations. As such, Plaintiff asserts that the ALJ must have impermissibly relied on the opinion of a single decision maker. (PageID.444–446.) But the ALJ gave no indication that he gave any consideration to the single decision maker's opinion. Moreover, Plaintiff's contention fails to recognize that it is the ALJ who is tasked with developing an RFC assessment, and an ALJ is not required to base the assessment on a medical opinion. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (quoting SSR 96–5p) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'"). It is the ALJ who has the ultimate responsibility for assessing a claimant's RFC, based on all of the relevant evidence. *See* 20 C.F.R. § 404.1545(a); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [his] residual functional capacity.") It is not the ALJ's burden to seek out medical opinions to prove or disprove a disability claim. *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). Rather, it is Plaintiff's obligation to provide evidence to support

her claim of disability. 20 C.F.R § 404.1512(c). It is plain the ALJ acted squarely within his authority by determining the RFC based on the objective record and Plaintiff's testimony. *See Ford v. Comm'r of Soc. Sec.*, 114 F. App'x 194, 198 (6th Cir. 2004) (finding substantive evidence supporting the RFC when the ALJ failed to adopt the only capacity opinion in the record); *Muscott v. Colvin*, No. CV 14-13890, 2015 WL 7248670, at *4 (E.D. Mich. Oct. 29, 2015), *report and recommendation adopted sub nom. Muscott v. Comm'r of Soc. Sec.*, No. 14-13890, 2016 WL 386432 (E.D. Mich. Feb. 2, 2016) (finding that "after the ALJ set forth good reasons for rejecting [the only opinion,] the ALJ did not need to seek out another physician's opinion."). Plaintiff appears to contend that there is no evidence to support a sedentary RFC because "virtually all of the medical evidence in the Record came for the reports" of Dr. Bilisko. But the ALJ did not give little weight to Dr. Bilisko's records, he gave little weight to Dr. Bilisko's opinions, which he found were inconsistent with the medical evidence, including the doctor's own treatment notes. The ALJ found these records supported a sedentary RFC, rather than Dr. Bilisko's opinion. Such a conclusion is supported by substantial evidence.

For all the above reasons, Plaintiff's first and second claims of error are denied.

**2.      The ALJ Properly Evaluated Plaintiff's Impairments.**

As noted above, the ALJ determined that Plaintiff suffers from multiple severe impairments. Plaintiff argues, however, that she is entitled to relief because the ALJ failed to also find that she suffers from the severe impairment of headaches. At step two of the sequential disability analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment. Where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as

severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error").

Here, the ALJ noted his obligation to develop an RFC based on all impairments, including those that were not severe. (PageID.52.) He then proceeded to note that he had developed the RFC after careful consideration of the entire record. (PageID.56.) Thus the record indicates the ALJ satisfied his obligation listed above. Plaintiff contends the ALJ erred by failing to mention Plaintiff's diagnosis of trigerminal neuralgia. (PageID.448.) However this assertion fails because the only discussion of this diagnosis appears in Exhibits 11F and 12F, exhibits that were not before the ALJ (PageID.65) and were added to the record by the Appeals Council. (PageID.34.) This Court, accordingly, is precluded from considering such material. In *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also Bass v. McMahon*, 499 F.3d 506, 512–13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that

the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). Plaintiff bears the burden of making these showings. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006).

Plaintiff makes only a passing mention to sentence six and makes no developed argument in effort to meet her burden. Plaintiff has, therefore, waived any such argument. *See, e.g.*, *Porzillo v. Dep't of Health & Human Servs.*, 369 F. App'x 123, 132 (Fed. Cir., Mar. 12, 2010) (claimant "waves any arguments that are not developed"); *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519, 537 n.25 (10th Cir. 2000) (arguments "superficially" developed are waived); *Financial Resources Network, Inc. v. Brown & Brown, Inc.*, 2010 WL 4806902 at *30 n.29 (D. Mass., Nov. 18, 2010) (same).

Accordingly, Plaintiff has not demonstrated reversible error in this claim of error.

### 3. The ALJ's Credibility Discussion is Supported by Substantial Evidence.

In her function report, and by her testimony given at the administrative hearing, Plaintiff alleged that she was impaired to an extent far greater than as ultimately recognized by the ALJ. As summarized by the ALJ, Plaintiff claimed that she:

> does not drive and has pain that radiates down her neck and shoulders. The claimant lies on a recliner most of the day and needs help performing self-care and showering. Her husband does most of the housework and cooking. The claimant has trouble sitting in one place too long and has trouble standing because she has burning pain. Ice and heat do not relieve her pain, and she has to use a walker seventy percent of the time. The claimant has side effects from her pain medication such as diarrhea and lack of concentration. The claimant can watch movies, play cards and read. She checks Facebook, goes shopping and talks with her mother on the phone.

(PageID.58.) The ALJ concluded that while her impairments cause limitations, Plaintiff was capable

for performing a limited range of sedentary work. (PageID.59.) Plaintiff claims the ALJ erred when making this determination.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, may be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, a claimant's assertions of disabling pain and limitation are evaluated under the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weight all the evidence and to resolve the significant conflicts in the administrative record." *Id.* (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be

accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (quoting *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972) ("[i]t [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony")). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit has stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

The ALJ found that Plaintiff's complaints were not credible because the "objective medical evidence does not support a finding that the claimant's allegations are as limiting as she alleges," as well as the fact that Plaintiff "did not seek consistent treatment or follow the advice of her doctors." The ALJ also noted that Plaintiff's "activities of daily living do not support a finding that the claimant is as limited as she alleges." (PageID.58–59.) After review, the Court finds substantial evidence supports the ALJ's conclusion that Plaintiff's testimony was not entirely credible.

As documented above, Plaintiff's physical examinations generally revealed mild results, with normal strength and range of motion of most extremities. (*See, e.g.*, PageID.350.) X-rays of Plaintiff's pelvis also found no specific pathology. (PageID.376.) On May 10, 2014, other than some loss of motion, an examination of Plaintiff's low back was normal. The strength in Plaintiff's legs was "ok to flexion." (PageID.301.) Moreover, as Dr. Bilisko found, there was

15

nothing worrisome in Plaintiff's lumbar spine MRIs. (PageID.351.) Exams on February 11, 2015 found "no obvious strength deficits" in Plaintiff's hips. (PageID.358.) Accordingly, the ALJ's conclusion that Plaintiff's assertions were inconsistent with the objective record is supported by substantial evidence.

The ALJ also noted a significant gap in Plaintiff's treatment from May 2014 to January 2015 and indicated that if Plaintiff's impairments were as severe as she alleged, it was reasonable to assume that she would have consistently sought treatment. (PageID.58.) The ALJ also found that Plaintiff did not follow her doctor's instructions to attend physical therapy. Plaintiff points out that in her function report and in her testimony she reported that she could not always afford to see a doctor. (PageID.86–87, 252.) Furthermore in an October 2014 letter to Plaintiff, Dr. Bilisko noted that her account balance was in collections and that he would only continue to see Plaintiff if she paid cash at the time of service. (PageID.369.) It appears, though, Plaintiff was able to come up with payment, as there are several treatment records postdating this letter. In any event, Plaintiff claims it was in error to discredit her testimony without considering her ability to afford treatment.

A claimant's failure to seek medical treatment over an extended period of time is often a factor to be considered against the claimant's assertion of a disabling condition.[2] *See Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) ("In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment" and "[a] failure to do so may cast doubt on the claimant's assertions of

---

[2] The rule is not without exception. "In some circumstances, of course, a failure to seek examination or treatment may say little about a claimant's truthfulness." *Strong*, 88 F. App'x at 846. (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 2004)).

16

disabling pain."); *see also* SSR 96–7p, 1996 WL 374186, at *7 (SSA July 2, 1996) ("[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints . . . ."). SSR 96–7p states, however, that before drawing an adverse inference from the claimant's failure to seek or pursue regular medical treatment, an ALJ must first "consider[] any explanations the individual may provide or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." 1996 WL 374186, at *7. The Court agrees with Plaintiff the ALJ does not appear to have done so here. However, that is not the end of the analysis because the Sixth Circuit has adopted a harmless error analysis to credibility determinations. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (quoting *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008) ( "[s]o long as there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion, such is deemed harmless and does not warrant reversal."). Here the ALJ found that Plaintiff's allegations were not supported by the objective evidence of record, and the court has found such is supported by substantial evidence.

The ALJ also found Plaintiff's assertions to be inconsistent with her daily activities. (PageID.59.) It was appropriate for the ALJ to take Plaintiff's daily activities into account in making his credibility determination. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). In her function report, Plaintiff admitted to being able to watch the news, walk around the house, and do laundry and sweep on some days. (PageID.253.) She is able to prepare meals, and put clothes in a washer and dryer. (PageID.254.) She can go shopping, and does so weekly for about two hours, accompanied by her husband. (PageID.255.) Despite the limited nature of these activities, given the deferential standard of review the Court find the ALJ reasonably found these activities to be

inconsistent with the severity of Plaintiff's allegations.

Accordingly, the Court finds there remains substantial evidence supporting the ALJ's ultimate credibility determination. Plaintiff's claim of error, therefore, is rejected.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**.

A separate judgment shall issue.


Dated: June 1, 2017                              /s/ Paul L. Maloney
                                                                Paul L. Maloney
                                                                 United States District Judge